## WHITE'S HEIRS v THE PRESIDENT, &c OF THE FLORENCE BRIDGE Co.

1. The defendant having answered the bill, but no testimony being taken, the parties agreed in writing, that the complainants were heirs, as they described themselves, and to submit the cause to the Chancellor at the approaching term of the Court—*Held*, that this was a hearing on bill and answer by consent, and the answer under the rule of practice was to be taken as true in all respects.

2. Where an act of the Legislature authorized the building of a bridge by means of stock to be subscribed, and after stock to a certain amount was subscribed, authorized the proprietors of a Ferry at the same place to subscribe their interest in the ferry and landings at an amount designated; if the owner of an interest in the ferry, &c., refuse to subscribe it, after the requisite amount of stock was taken, and the bridge is afterwards erected, his heirs cannot come in as stock holders, but will be concluded by the refusal of their ancestor.

The plaintiffs, (some of whom are infants and sue by their next friend,) describing themselves as the heirs at law of James White, late of Abingdon, in the State of Virginia, filed their bill in the Court of Chancery, sitting at Moulton. It is stated that James White, in his lifetime, was seized and possessed in fee simple, of one eighth part of a ferry across the Tennessee river, at the town of Florence; that the interest of their ancestor descended to the plaintiffs, and that the ferry and landings were of the value of thirty-five thousand dollars; that on the 12th January, 1832, a charter was granted, by an act of the Legislature of the State of Alabama, to incorporate a company under the style of " the President, Directors and Company of the Florence Bridge Company," for the purpose of erecting a bridge across the Tennessee river at that town. By the charter it was provided, that when the sum of sixty thousand dollars should be subscribed, in shares of one hundred dollars each, the owners of the ferry should be permitted to subscribe their respective shares therein and the landings thereto belonging, at the rate of thirty five thousand dollars for the entire interest; and that whatever might be thus subscribed should become part of the capital and joint stock.

It is also alledged, that shortly after the enactment of the

charter, books of subscription were opened by the commissioners designated for that purpose, and the sum of eighty thousand dollars or thereabouts, of stock was subscribed, and the bridge erected, which is now in constant use—that the ferry has become of no value, and with its landings has been appropriated to the purposes of the corporation.

The plaintiffs state further, that their ancestor did not, in his lifetime subscribe his interest in the ferry, in the stock of the corporation; they alledge that on the 11th day of December, 1839, they applied to the defendants for permission to subscribe the interest which descended to them in the ferry and the landings, but the defendants then, and have ever since, refused to allow them to take stock in the Bridge Company for the amount of the same.

The bill charges the receipt of tolls by the corporation from the —— day of ———, and prays that the plaintiffs may be allowed to subscribe their interest in the ferry and landings, and receive stock therefor; and also for an account of tolls received since the 11th December, 1839.

The corporation, through its President, answered the bill, admitting every thing alledged in regard to the charter granted in 1832, the interest of James White, deceased, in the ferry, the erection of the bridge and appropriation of the landings— but it neither admits or denies the heirship of the plaintiffs, and insists that if they are heirs the fact may be proved. The defendants state that James White, in his lifetime, did not subscribe according to the charter for stock in the corporation, but refused to do so, unless the company would agree in case the bridge should be destroyed, or rendered unfit for use, that his interest in the ferry should revert to him; to these terms, the President and Directors refused to assent. It is admitted that two of the adult plaintiffs, about the time alledged in the bill, did offer to subscribe for stock, the amount of their interest in the ferry, at the rate prescribed in the charter, but the President and Directors refused to receive their subscription, because the rate was greatly beyond the value of their interest; though they are willing to permit the heirs of James White to become stockholders on fair terms.

Previous to the hearing in the Court of Chancery, the par-

ties, by their solicitors, made an agreement in writing, as follows:

" In this case it is admitted that the complainants are the heirs of the said James White, mentioned in the bill, and we agree to submit the case to the Chancellor at the approaching special term. *January 19th*, 1842."

The cause being heard by the Chancellor, he rendered a decree as follows :

" This case is submitted for a decree on the bill and answer, and upon the admission of 'the parties, by their counsel, 'that the complainants are the heirs of the said James White, mentioned in the bill.' The answer admits all the material allegations of the bill, with explanations and additions in some points, except what is embraced in the above admission. The answer is taken as true; and it appears to me to show very clearly, that the complainants are not entitled to the decree they ask. It is therefore ordered and decreed, that the complainant's bill be dismissed at their costs."

To revise this decree the complainants have prosecuted a writ of error to this Court.

McClung, for the plaintiffs in error.
S. Parsons, for the defendant.

COLLIER, C. J.—In Forrest and Wife v. Robinson,[2 Ala. Rep. 215,] it was considered clear that where parties by consent, bring a cause to a hearing on bill and answer, the answer must be taken as true, even as to allegations which are irresponsive, or set up matters in avoidance. This decision was induced by the 9th rule of Chancery Practice, published in 1 Stew. Rep. 617, which has been abrogated by the later rules of practice. But the fourteenth of the later rules, [2 Ala. Rep. 12,] provides, " that in all cases a replication shall be considered as filed, unless the record shall plainly disclose that the cause is set down for a hearing on bill and answer by consent." Now the object of this rule, though perhaps not so clearly expressed as might be, was doubtless to secure to a defendant the benefit of his answer as evidence, where the parties consented to a hearing without proof from either side. True, the

rule does not in express terms declare such to be the consequence where a cause is thus heard, yet it can subserve no purpose, unless its meaning be what we have supposed.

The agreement of the defendants to admit the heirship of the plaintiffs, and the consent of the parties to submit the case to the Chancellor at the then approaching term of his Court, was in effect a consent to bring the cause to a hearing on bill and answer. The admission that the plaintiffs were heirs of James White, deceased, cannot be so far regarded as proof in the cause, as to lead to a different conclusion; that admission is rather a waiver of the necessity of adducing testimony which the answer required, than evidence. And though the agreement is not *in totidem verbis* to submit the bill and answer, but the case itself, yet, as no proof was taken, we must consider the cause as having been heard on bill and answer, by consent. This being so, we are to regard the answer as in all respects true.

It is alledged in the defendant's answer, that the ancestor of the plaintiffs did, in his lifetime, refuse to subscribe for stock in the Bridge Co., to the amount of his interest in the ferry and its landings, unless the President and Directors of the corporation would agree, that that interest should revert to him in the event the bridge should be destroyed, or become unfit for use; that this condition was never assented to, and no subscription was consequently made. That provision of the charter under which the plaintiffs insist upon a right to be let in as stockholders, is in these words : " When there shall be subscribed the sum of sixty thousand dollars, the owners of the ferry across the Tennessee river, at said town of Florence, shall be permitted to subscribe their respective shares or interests in said ferry and ferry landings, at the rate of thirty-five thousand dollars for the whole ; and the interests so subscribed shall become a part of the capital and joint stock of said corporation; and when the whole interest in said ferry and landings shall be subscribed or condemned according to the provisions of this act, the said corporation shall be vested with the whole title thereto, both in law and equity, to be held by them and their heirs and successors forever, upon the completion of the bridge according to this act." This statute doubtless contemplated

that the corporation should acquire a right to the ferry and landings, either by the proprietors subscribing stock to the amount which the Legislature had estimated as its value, or by having the interest of the respective shareholders valued by means of legal process, and paying what might be adjudged to them respectively. · But the act is incomplete in failing to prescribe the manner in which the value should be ascertained. Whether it would be competent now to legislate upon this subject, or whether the plaintiffs, and others standing in the same predicament with them, may maintain an action at law for an appropriation of their property, are questions which do not arise in this case. The point to be considered is, does the refusal of the ancestor of the plaintiffs to come in as a stockholder under the charter, prevent them from exercising that privilege?

It certainly requires no act in writing, in order to render effectual a renunciation of the right, which the act conferred upon the owners of the ferry; a refusal to take stock would not be a contract in any manner concerning lands, but the legal effect of a subscription would be, not only to transfer the franchise of keeping a ferry, but the landings appurtenant to it, and must be in writing.

A positive refusal to subscribe shares in the ferry for stock in the bridge, would be a waiver of the right, the more especially if there had been a change in the condition of the corporation; and a change of purpose under such circumstances can only be permitted by mutual consent. Upon the proprietors of the ferry declining to come in under the act, the Bridge Company may have increased its subscription for the purpose of raising the means to purchase the entire interest of the ferry and landings. If this were the case it might operate inconvenience and injustice, and in fact render necessary a reduction of the stock subscribed in money, if the ferry should be added to the joint stock of the corporation.— The Legislature never could have intended, that the shareholders of the ferry, should be allowed to change their decision on this point at pleasure, and when such a state of things might have retarded, if not prevented, the erection of the bridge.

The refusal of the ancestor of the plaintiffs to subscribe his interest in the ferry and landings to the stock ¡of the bridge, is a bar to the assertion of such a right by them ; and the decree of the Court of Chancery is consequently affirmed.